28 F.3d 110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles ONUORAH, Defendant-Appellant.
 No. 92-50357.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1993.
Decided July 8, 1994.
 
 Before: FLETCHER, PREGERSON, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. INTRODUCTION
 
 2
 Charles Onuorah appeals his conviction for eight counts of making false claims against the government, and conspiring to do so, in violation of 18 U.S.C. Secs. 286 and 287. He also appeals his thirty-one month prison sentence and the order requiring him to pay $46,081 in restitution to the government. Charles Onuorah is presently incarcerated and has served about twenty-five months of his sentence. We have jurisdiction under 18 U.S.C. Sec. 3231. We affirm.
 
 
 3
 Charles Onuorah makes the following claims of error: (1) that the district court improperly allowed his trial counsel to waive his Batson objection to the prosecution's peremptory challenge of an African-American juror; (2) that several evidentiary rulings cumulatively denied him his due process rights; (3) that restitution was not proper; (4) that the district court enhanced his sentence based on an erroneous determination that he was an "organizer or leader"; and (5) that delays in the disposition of his appeal violated his due process rights.
 
 II. FACTS
 
 4
 The indictment accused defendant Charles Onuorah of directing a scheme by which his codefendants recruited people to file false income tax returns and apply for tax refund anticipation loans. The codefendants, in Los Angeles, sent the names and social security numbers of the taxpayers to Charles Onuorah in Austin, Texas, and he prepared the tax returns using fictitious information. Specifically, he falsely listed each taxpayer's occupation as "taxi driver," and filed false Schedule C's ("Profit or Loss from Business") and false Form 4136's (Credit for Federal Tax on Fuels). He then returned the forms to his codefendants by overnight mail, and they helped the taxpayers fill out the returns and apply for the refunds. The income tax refund was split among the taxpayer, the codefendants, and Charles Onuorah.
 
 
 5
 In addition to the specific counts charged in the indictment, the government introduced into evidence the testimony of an uncharged Austin, Texas resident, Anthony Akpaka, a taxi driver who claimed that Charles Onuorah had also filed a tax return for him based on false information supplied by Charles Onuorah. This return, too, included a false Schedule C and false Form 4136.
 
 
 6
 Charles Onuorah painted quite a different picture of his actions. He testified that he was recruited by one of his codefendants, Lewis Onuohah, to process the tax returns of codefendant Lewis Onuohah's employees. Charles Onuorah testified that he based the tax returns on information provided by codefendant Lewis Onuohah; that he did not know the information was false; and that Lewis Onuohah paid him for this work, but not regularly, and not based on any particular agreement.
 
 
 7
 During jury selection the government exercised a peremptory challenge against an African-American juror, Charles Bagley. Mr. Bagley was the second African-American removed by the government through exercise of a peremptory challenge out of three who had been subjected to voir dire examination. Two African-Americans remained subject to call from the venire. After the government exercised its peremptory challenge against Mr. Bagley, Charles Onuorah, who is an African-American, objected through his attorney that the government's use of its peremptory challenge was racially motivated.
 
 
 8
 The district judge held a hearing as required by Batson v. Kentucky, 476 U.S. 79 (1986). At the hearing, the government asserted that it had exercised the peremptory against juror Bagley because he had fallen asleep during the voir dire of the other jurors. The district judge accepted this explanation as racially neutral.
 
 
 9
 The next day, the district judge sua sponte asked the government its reasons for having exercised its earlier peremptory challenge against Beatric Rogers, the first African American juror who was excused. The government could only point to subjective factors, such as "she was curt." The district court then determined that the government's peremptory challenge had been racially motivated. At that point the court gave Charles Onuorah the option of having the entire jury panel dismissed and starting over, or continuing with the panel as constituted and granting the defense two additional peremptory challenges. Counsel for Charles Onuorah asked the court to increase the number to four. The court denied this request. Counsel chose to accept the two additional peremptory challenges in lieu of dismissing the jury panel. In the presence of Charles Onuorah, counsel then agreed to waive the Batson objection. The record does not indicate whether counsel consulted with his client on this decision.
 
 III. CHARLES ONUORAH'S BATSON OBJECTION
 
 10
 Charles Onuorah argues on appeal through new counsel that his trial counsel's waiver of his rights under Batson was ineffective, because Charles Onuorah did not participate personally in the waiver. This alleged error was not brought to the attention of the trial court. We therefore review for plain error. Fed.Rule Crim.Proc. 52. This requires us to determine whether: (1) there was a clear violation of a legal rule, (2) that was not effectively waived, and (3) that prejudiced the outcome of the trial. See United States v. Olano, 113 S.Ct. 1770, 1776-78 (1993). For the reasons stated below, we conclude that Charles Onuorah effectively waived his remedy under Batson.
 
 
 11
 "[T]he State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded." Batson v. Kentucky, 476 U.S. at 85. This principle applies to federal defendants via the due process clause of the fifth amendment. United States v. Bishop, 959 F.2d 820, 823 n. 4 (9th Cir.1992).
 
 
 12
 To invoke Batson, the defendant must initially establish a prima facie case of purposeful discrimination by showing that the prosecutor has peremptorily challenged members of his race under circumstances that raise an inference of discrimination. United States v. Lewis, 837 F.2d 415 (9th Cir.1988). To defeat such a showing the prosecutor must "articulate a [race] neutral explanation [for the challenge] related to the particular case to be tried." Batson, 476 U.S. at 98. If the court finds, as it did here, that the explanation is not race neutral, then the Batson remedy is mandated. Id. at 100 n. 24. We give great deference to the district court's findings, and will not disturb them unless they are clearly erroneous. See Hernandez v. New York, 111 S.Ct. 1859, 1869 (1991).
 
 
 13
 In the case at bar, the district court found that Charles Onuorah made a prima facie case with respect to both African-American jurors peremptorily challenged by the government. Therefore, the government was required to enunciate race-neutral grounds for each challenge. The district court found that the government did not meet this requirement with respect to one of the jurors, Ms. Rogers. 1/23/92 R.T. at 24 ("I can't accept the reason as a race neutral reason").
 
 
 14
 All that remained, then, was to determine the appropriate remedy for the violation of Charles Onuorah's fifth amendment rights.[1] The district court's remedy was to offer Charles Onuorah a choice of selecting a jury from a new panel or accepting two additional peremptory challenges. We review de novo whether a particular remedy is sufficient to cure a Batson violation. See Bishop, 959 F.2d at 827 (question of law whether remaining "representative jury" cured discrimination).
 
 
 15
 The Supreme Court, in dicta in Batson, suggested that the appropriate remedy upon a finding of discrimination is either to "select a jury from a new panel not previously associated with the case," or else to "disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire." Batson, 476 U.S. at 100 n. 24 ("we express no view" on which of these two remedies is more appropriate). By the time the district court found that the government improperly exercised a peremptory challenge against juror Rogers, only the first of these two remedies was available because Ms. Rogers had been excused and left the courtroom. The court, hoping to avoid dismissing the panel and starting over again, offered Charles Onuorah a choice. The court would grant the defense two additional peremptory challenges, "one for, essentially, Mrs. Rogers, and one for Mr. Bagley," or else it would dismiss the jury panel and start the selection process anew.
 
 
 16
 The former arrangement, if forced on Charles Onuorah, would not have satisfied Batson 's mandate, because it would not have honored "the fundamental principle that 'under Batson, the striking of one black juror for a racial reason violates the Equal Protection Clause.' " Bishop, 959 F.2d at 827 (quoting United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986) (emphasis added in Bishop )).
 
 
 17
 The district court understood that a remedy of two additional peremptory challenges could not be imposed on Charles Onuorah involuntarily. The judge said, "it would take your consent. If you're not willing to do this, then I will dismiss the panel, and we will begin again. And as a practical matter--there is no assurance that you will be any better off with another panel than you are with this panel." 1/23/92 R.T. at 25. Therefore, the question is whether the court properly concluded that it effectively received Charles Onuorah's consent to an alternative arrangement.
 
 
 18
 "Waiver is the 'intentional relinquishment or abandonment of a known right.' " Olano, 113 S.Ct. at 1777 (quoting Johnson v. Zerbst, 304 U.S. 458 (1938)). Given the specific facts of this case, it is clear that Charles Onuorah's counsel effectively waived Onuorah's right to have a new jury empaneled as a remedy for the Batson violation when counsel selected an alternative that he deemed preferable. Such waiver precludes Onuorah from raising this issue on appeal. See Olano 113 U.S. at 1777 (an effective waiver extinguishes the error).[2]
 
 IV. OTHER CLAIMS OF ERROR
 
 19
 A. District court actions alleged to deny Charles Onuorah his due process right to a fair trial.
 
 
 20
 Charles Onuorah contends that the district court committed three errors which cumulatively denied him his right to a fair trial: (1) that the court improperly limited his cross-examination of codefendant Lewis Onuohah; (2) that it admitted Mr. Akpaka's testimony of similar past misconduct by Charles Onuorah; and (3) that it unfairly cross-examined Charles Onuorah. We review de novo the question whether these alleged errors cumulatively amounted to a violation of due process. United States v. Lewis, 979 F.2d 1372, 1374 (9th Cir.1992). Because we do not agree that any of Charles Onuorah's claims have merit, there is no need to discuss whether cumulatively they amounted to a violation of due process.
 
 
 21
 1. Cross-examination of codefendant Onuohah: We review for abuse of discretion the "essentially factual" determinations involved in this and the following claims of error. See United States v. Chu Kong Yin, 935 F.2d 990, 994 (9th Cir.1991). Mr. Onuorah attempted to impeach codefendant Onuohah's testimony by placing in evidence the fact that codefendant Onuohah's bail was revoked because he was charged with a serious crime. The district court excluded this evidence.
 
 
 22
 The evidence of codefendant Onuohah's alleged probation violation was only slightly, if at all, relevant to his credibility, and the district court was well within its discretion to determine that the evidence was more prejudicial than probative. See Fed.R.Evid. 403.
 
 
 23
 2. Admission of Mr. Akpaka's testimony of Charles Onuorah's prior misconduct: Charles Onuorah attempted to exclude the testimony of Mr. Akpaka that Charles Onuorah had filed a tax return for him based on false information supplied by Onuorah, and that the return included a false Schedule C and false Form 4136.
 
 
 24
 The district admitted the testimony under Federal Rule of Evidence 404(b), which permits admission of evidence of prior misconduct to prove "motive opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Provided, however, that: (1) there was sufficient proof that the defendant committed the prior act; (2) the prior act was close in time and similar to the charged offense; and (3) the prior act was relevant to a material issue. See United States v. Sneezer, 983 F.2d 920, 924 (9th Cir.1992), cert. denied, 114 S.Ct. 113 (1993).[3]
 
 
 25
 In the case at bar, each of these factors weighs in favor of the district court's decision. Charles Onuorah did not deny filling out Mr. Akpaka's return, although he did deny knowing that the information in the return was false. Mr. Akpaka's return was filed at approximately the same time as the charged false returns. Charles Onuorah accomplished essentially the same task for Mr. Akpaka as that done for the taxpayers involved in the charged offenses. And, finally, the testimony was relevant to Charles Onuorah's knowledge that the returns he was preparing were false.[4]
 
 
 26
 3. District court's questioning of Charles Onuorah: Charles Onuorah contends that questions posed to him by the court during his testimony amounted to "overzealous cross-examination," and that the district court improperly denied Charles Onuorah's resulting motion for a mistrial. Such a claim of excessive judicial intervention warrants reversal only if the record discloses actual bias or leaves an abiding impression that the judge appeared to the jury to be a partisan or an advocate. United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989).
 
 
 27
 It is well established that a court may participate in the examination of witnesses, so long as its purpose is to clarify the evidence, and so long as it remains impartial. Lewis, 979 F.2d at 1374. To support his case Charles Onuorah simply quotes from the transcript and concludes that the court's questions were designed to impeach Charles Onuorah, and that the questioning gave the impression that the court did not believe Charles Onuorah. However, our own reading of the transcript supports the court's explanation that the judge was only seeking to clarify ambiguous statements made during the government's cross examination.
 
 B. Restitution:
 
 28
 Charles Onuorah challenges the district court's order of restitution to the government of $46,081.00 under 18 U.S.C. Secs. 3663 & 3664. We review a district court order of restitution for abuse of discretion provided it is within the bounds of the statutory framework. United States v. Sanga, 967 F.2d 1332, 1335 (9th Cir.1992). We review the factual findings underlying such an order for clear error. Id. at 1336.
 
 18 U.S.C. 3664 provides:
 
 29
 The court, in determining whether to order restitution under Sec. 3663 of this title and the amount of such restitution, shall consider the amount of loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.
 
 
 30
 This requires the district court to consider the defendant's ability to pay when determining the amount of restitution, but it need not do so explicitly on the record. Sanga, 967 F.2d at 1336. Present indigence does not preclude an order of restitution so long as the evidence supports the defendant's future ability to pay. See United States v. Smith, 944 F.2d 618, 623 (9th Cir.1991), cert. denied, 112 S.Ct. 1515 (1992) (restitution of $12.8 million upheld despite present indigence where defendant had unconventional financial abilities, numerous wealthy contacts, and could get a job immediately for $10,000 a month). "[T]he record need only 'reflect that the district judge had at his disposal information bearing on [ability to pay].' " Id. (quoting United States v. Cannizzaro, 871 F.2d 809, 811 (9th Cir.1989), cert. denied, 493 U.S. 895 (1989)).
 
 
 31
 Charles Onuorah contends that the restitution order was wrong because he does not have the prospective ability to pay the amount ordered. In support of his claim, he points out that he was indigent at the time of sentencing and that his only education was a few college courses in accounting, which may be useless after a federal conviction for tax fraud. Furthermore, he argues that he is likely to be deported after he serves his prison sentence.
 
 
 32
 However, these factors are insufficient for us to reverse for abuse of discretion. First, the district court had all of this information at its disposal at the time of sentencing. Furthermore, it is clear that the district court was aware of and considered Charles Onuorah's indigent status, since it used that factor to waive a $400 fine.
 
 
 33
 C. Sentencing enhancement for "organizer or leader"
 
 
 34
 Charles Onuorah contends that the district court erred by increasing his base offense level by four for his aggravating role as an "organizer or leader." Whether Charles Onuorah was an organizer or leader is a question of fact that we review for clear error. United States v. Hoac, 990 F.2d 1099, 1110 (1993), cert. denied, 114 S.Ct. 1075 (1994).
 
 
 35
 Sentencing Guideline 3B1.1(a) provides for a four level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Factors to consider include:
 
 
 36
 [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 37
 U.S.S.G. Sec. 3B1.1, comment, (n. 3). Charles Onuorah contends that there was insufficient evidence to meet this standard.
 
 
 38
 But, there was evidence that Charles Onuorah initiated the crime, that he recruited the others to join, that he instructed them in its operation, that he kept the largest portion of the profits, and that he retained de facto control over his confederate's activities because he was the only member of the conspiracy who knew how to prepare the false tax returns. This is sufficient.
 
 D. Delays in disposition of the appeal:
 
 39
 Finally, Charles Onuorah argues that delays in processing his appeal have violated his right to due process. We have held that extreme delay in processing an appeal may amount to a violation of due process. United States v. Antoine, 906 F.2d 1379, 1382 (9th Cir.1990), cert. denied, 498 U.S. 963 (1990). To determine whether a delay in processing an appeal is extreme enough to amount to a violation of due process we examine the length of delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. Id. "[A] due process violation cannot be established absent a showing of prejudice." Id.; see also United States v. Tucker, 8 F.3d 673, 674-75 (9th Cir.1993), cert. denied, 114 S.Ct. 1230 (1994).
 
 
 40
 Charles Onuorah has not shown that he was prejudiced by the admittedly substantial length of time his case has been on appeal.[5] The primary reason he cannot show prejudice is that his appeal is not meritorious, and would not have been more meritorious if it had been processed in a more timely manner. He does not allege that his incarceration has been oppressive, except to point out the amount of time he has had to remain in prison. And he has not demonstrated any unusual anxiety pending his appeal beyond that of any other prisoner awaiting the outcome of his appeal. See Antoine, 906 F.2d at 1832-33 (applying the above factors to analyze prejudice).
 
 
 41
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 A Batson objection to a peremptory challenge may be lost if not timely raised. See Dias v. Sky Chefs, Inc., 948 F.2d 532, 534 (9th Cir.1991) (objection untimely where raised after excluded jurors dismissed, jury sworn, court recessed and reconvened, and several motions and objections argued). Therefore, had not the judge sua sponte raised the issue of Ms. Rogers' exclusion, Charles Onuorah would likely have forfeited his right to any remedy. However, once the district court determined that a juror was improperly removed, it was required to effect some remedy
 
 
 [2]
 The analysis might be different if there was any evidence that Charles Onuorah's trial counsel acted outside the realm of reasonable professional assistance, as alleged by Charles Onuorah's present counsel. To the contrary, the record supports the conclusion that Charles Onuorah was zealously represented by an able attorney at his trial
 
 
 [3]
 Sneezer added an additional requirement that the probative value of the evidence outweigh any prejudicial value. However, the probative/prejudicial balancing is rooted in Rule 403 and is separate from the Rule 404(b) requirement. See United States v. Khan, 993 F.2d 1368, 1377 n. 8 (9th Cir.1993)
 Charles Onuorah contends that the district court's failure to state explicitly that the probative value outweighed the prejudicial impact of the testimony was plain error. However, rule 403 does not require an explicit weighing of the evidence, so long as it is clear from the record that the trial court engaged in the required balancing. See, e.g., United States v. Ramirez-Jimenez, 967 F.2d 1321 (9th Cir.1992). Here, there is little doubt that the experienced trial judge did so.
 
 
 [4]
 Charles Onuorah also sees plain error in the district court's failure to include a limiting instruction on this evidence where none was requested. Assuming, arguendo, it was error to omit such an instruction, we see no prejudice from the omission
 
 
 [5]
 It has been approximately 17 months since Charles Onuorah's sentencing on May 20, 1992