**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Jajuane HANKINS, aka Jajuane Fisher,
Defendant—Appellant.**

**No. 02–10448.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 1, 2003.

Decided March 29, 2004.

---

1. *After* this incident, petitioner still characterized himself as a moderate Muslim in his 1998 asylum application.

Kathleen Bliss, Justin J. Roberts, Esq., USLV–Office of the U.S. Attorney, Las Vegas, NV, for Plaintiff–Appellee.

Jason F. Carr, Esq., FPDNV–Federal Public Defender's Office, Las Vegas, NV, for Defendant–Appellant.

Before: LEAVY, PAEZ, and BERZON, Circuit Judges.

## MEMORANDUM [*]

Jajuane Hankins ("Hankins") appeals his. conviction for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). He challenges the district court's evidentiary ruling allowing the government to present evidence of a prior bad act relating to a similar offense. We have jurisdiction under 28 U.S.C. § 1291, and reverse and remand for a new trial.[1]

### I

Hankins argues that the district court admitted evidence relating to a prior conviction for attempted possession of a firearm by a felon in violation of Rule 404(b) of the Federal Rules of Evidence. The government contends that evidence relating to Hankins's prior bad act [2] was admissible under the "knowledge" exception to

---

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because the parties are familiar with the facts of this case, we recite them only as necessary to explain our decision.

2. Although the parties refer to Hankins's "prior conviction," the record reflects that the government never presented evidence as part of its case that, in fact, Hankins had been arrested and convicted of attempting to possess the assault rifle on March 17, 2001. However, Officer Kryszczuk's testimony and Christmas's cross-examination, when considered together, would have permitted the jury to conclude that Hankins sustained a prior conviction for attempted possession of the assault rifle on March 17, 2001.

Rule 404(b). According to the government, Hankins's involvement in the March 17, 2001 incident showed that Hankins knew about and had access to guns in Ursula Christmas's closet and that, therefore, he had "control or dominion" over the Ruger handgun.[3] "We review the district court's decision to admit evidence of a prior bad act under Fed.R.Evid. 404(b) for an abuse of discretion." *United States v. Lewis*, 837 F.2d 415, 418 (9th Cir.1988).[4]

A four-part test guides whether evidence should be admitted under Rule 404(b): "evidence of prior criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir.1994). Here, there is no dispute that the prior bad act evidence met the second and third prongs of this test. However, we conclude that the challenged evidence did not tend to prove a material point and was not sufficiently similar to the offense charged.

## A. Tendency to Prove a Material Point

■ Initially, at a pretrial hearing, the government offered numerous theories about why evidence of Hankins's prior bad act might be relevant. Ultimately, the government settled on the theory of knowledge.[5] "When the government's theory is one of knowledge ... [we have] emphasized that the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *Id.* at 1181–82.

Here, the government explained that evidence relating to the March 17, 2001 incident showed that Hankins generally knew about and had access to guns in the downstairs hall closet in Christmas's apartment. However, the government failed to "articulate *precisely* the evidential hypothesis" about what could logically be inferred from Hankins's involvement in the March 17, 2001 incident. *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir.1982) (emphasis added). Any inferences that could be drawn about Hankins's *general* knowledge of guns in Christmas's closet were immaterial to the ultimate question of whether Hankins knowingly possessed the *specific* handgun at issue in this case.

## B. Similarity

"[S]imilarity is necessary to indicate knowledge and intent, because it can fur-

---

3. "To prove constructive possession, the government must prove a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over the firearms." *United States v. Carrasco*, 257 F.3d 1045, 1049 (9th Cir.2001) (quoting *United States v. Gutierrez*, 995 F.2d 169, 171 (9th Cir.1993)).

4. Because we conclude that the evidence relating to Hankins' prior conviction was improperly admitted under Rule 404(b), we need not address Hankins's alternative argument that the evidence also was inadmissible under Rule 403.

5. The government also argues that Hankins's prior conviction was admissible to show *modus operandi* and absence of mistake. These arguments are without merit. Hankins' prior act lacked the indicia of distinctiveness required to qualify as a *modus operandi*. *See Guam v. Shymanovitz*, 157 F.3d 1154, 1159 n. 9 (9th Cir.1998). And Hankins did not claim that he mistakenly possessed the gun; his defense was that he never possessed the gun in the first place because he did not know about it.

nish the link between knowledge gained in the prior act and the claimed ignorance of some fact in the offense charged." *Mayans,* 17 F.3d at 1182 (internal quotation marks and citation omitted). The government argues that the circumstances surrounding the March 17, 2001 and May 29, 2001 incidents—i.e., the fact that both firearms were found in the same closet in the same apartment—are sufficiently similar to support a logical inference of relevance. This argument overlooks the obvious difference between the two incidents: the evidence relating to the prior bad act on March 17, 2001 involved a different firearm (an assault rifle) than the one at issue in this case (a Ruger handgun). Had Hankins claimed that he had never, at any time, possessed a gun, the March 17, 2001 incident would have been relevant. However, Hankins only disputed that he knowingly possessed the Ruger handgun. In this context, the evidence of Hankins's prior bad act involving a different gun was not sufficiently similar to "furnish the link" to the crime charged.

In sum, the government's evidence relating to his prior bad act on March 17, 2001 did not tend to prove a material point and was not sufficiently similar to the presently charged offense, and thus did not qualify under the "knowledge" exception to Rule 404(b). Because the evidence served no purpose other than to show Hankins's

criminal disposition,[6] the district court abused its discretion in admitting the government's evidence of Hankins's prior bad act.[7]

## II

■ Even if the district court erred in admitting evidence of Hankins' prior bad act under Rule 404(b), we will not reverse if the error was harmless. *United States v. Seschillie,* 310 F.3d 1208, 1214 (9th Cir. 2002). We consider a variety of factors to determine whether improperly admitted prior bad act evidence caused substantial harm, including the strength of the rest of the government's case against the defendant, the extent to which the government emphasized the prior act evidence, and the presence of instructions "about the limited inferences" that jurors can draw from the evidence. *Mehrmanesh,* 689 F.2d at 832.

We begin by noting that, "[w]here a prior conviction was for a gun crime or one similar to other charges in a pending case[,] the risk of unfair prejudice would be especially obvious. . . ." *Old Chief v. United States,* 519 U.S. 172, 185, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). The fact that both firearms were found in the same hall closet of the same apartment undoubtedly heightened the risk that the jury would infer from the circumstances of the March 17, 2001 incident that Hankins knowingly

**6.** The government asserts that "a jury could reasonably infer that after being caught once in the apartment with a firearm in the downstairs hall closet that the second time was more likely a knowing possession of the firearm." The government's theory, however, amounts to nothing more than an argument about Hankins's "criminal disposition." *Lewis,* 837 F.2d at 419. Evidence of criminal propensity is clearly barred by Rule 404(b).

**7.** The government argues that the reference to Hankins's prior conviction during the cross-examination of Christmas was admissible, in the alternative, to impeach Christmas

under Rule 608(b). We reject this argument for the same reasons we reject the government's theory of knowledge under Rule 404(b). Hankins's earlier knowing possession of an assault rifle does not logically contradict Christmas's testimony about Hankins's later ignorance of the Ruger handgun. Although Christmas's direct examination may have "opened the door" to inquiries about whether Hankins knew about the presence of the Ruger handgun on May 29, 2001, she never testified about the March 17, 2001 incident with the assault rifle.

possessed the Ruger handgun on May 29, 2001.

Although the government presented other evidence—including evidence of Hankins's fingerprint on the magazine of the gun—the issue of whether Hankins knowingly possessed the Ruger handgun was a close one. The fact that the government resorted to impermissible references to the prior bad act on March 17, 2001 suggests that it was not confident in its ability to prove *knowing* possession in this case. In fact, the government made multiple references to Hankins's prior bad act—during Officer Kryszczuk's testimony on direct examination, Christmas's testimony on cross-examination, and during closing argument. *See United States v. Vizcarra–Martinez,* 66 F.3d 1006, 1017 (9th Cir.1995) (noting that "the government relied heavily upon the evidence in question" by referring to the prior bad act multiple times during the trial). These multiple references to the circumstances surrounding Hankins's prior bad act compounded the risk of prejudice to Hankins.

Although the district court gave limiting instructions to the jury, the instructions were too broad to prevent the jury from drawing impermissible inferences about Hankins's character and criminal propensity. For example, Hankins never asserted a defense of mistake or accident. Nonetheless, the district court permitted the jury to consider the evidence of Hankins's prior bad act as it bore on his "knowledge, intent, preparation, plan or the absence of mistake or accident." Without the guidance of more narrowly drawn limiting instructions, the jury likely engaged in impermissible speculation about how Hankins's involvement in the March 17, 2001 incident reflected on his character and criminal propensity on May 29, 2001.

In light of these circumstances, we conclude that, more probably than not, the references to Hankins's prior bad act had a "significant prejudicial effect upon the jury's decision." *Id.* (internal quotation marks omitted). Accordingly, we reverse the judgment of conviction and remand for a new trial.

REVERSED AND REMANDED.