BERZON, Circuit Judge,
dissenting:
I respectfully dissent. I would hold that John’s statements to Special Agent Hale in the hospital were not voluntary, and should not have been admitted into evidence; that the Federal Rules of Evidence barred the admission of testimony regarding John’s previous acts of domestic violence; and that the Rules also barred the admission of Norma Jean Henry’s out-of-court statement to her physical therapist identifying John as her abuser. Taken together, these errors seriously undermined the fairness of John’s trial. I would therefore reverse the conviction.
1. The district court erred in concluding that John’s confession was voluntary.[1] When Hale first interviewed John in the hospital, John had a tube in his throat and was unable to speak. He was heavily medicated and in considerable pain. When invited to sign a form waiving his Miranda rights at the first interview, John inquired in writing if it would be possible to sign it at a later date. As recounted by Hale, John’s initial responses at the second interview indicated that John was still “not quite ready right now” for an interview, and that he would have preferred to “talk later when [his] voice [was] a little better.” John also wrote “Can I wait tell [sic] I get my voice back then we can talke [sic].” Taken together, John’s written statements and responses to Special Agent Hale’s *597 prompts make clear that John did not wish to proceed with the interrogation under the circumstances, and desired to continue the interrogation only when he was capable of talking.
John’s initial written statement was suggested to John, rather than volunteered; it consisted primarily of Hale describing a particular version of events and asking John whether it was accurate, to which John nodded yes or no. Given John’s inability to speak, it would have been exceptionally difficult for him to object to or clarify any aspects of Hale’s account. Indeed, during the second interview, John stated that “I think all [sic] go with the statement you wrote because I don’t even know what had happened that night,” indicating acquiescence rather than agreement.
Notably, John’s statement includes obvious inaccuracies or confusion. For example, he stated that he had consumed over 30 cans of beer on the day of the killing, but his blood-alcohol concentration indicated that he had not been drinking heavily. Adoption of “demonstrably false” answers constitutes “particularly strong evidence” of suggestibility. United States v. Preston, 751 F.3d 1008, 1025 (9th Cir. 2014) (en banc).
The facts of this case somewhat resemble those in Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). In Mincey, government agents interviewed the defendant while he was in the hospital suffering from a serious gunshot wound. When interviewed, Mincey, like John, was unable to talk; responded to questioning by writing answers on pieces of paper; and stated that he would be able to answer more accurately at a future date. Mincey was “evidently confused' and unable to think clearly,” as evidenced by written answers which were “on their face not entirely coherent.” Id. at 398-99, 98 S.Ct. 2408. The Supreme Court held that Mincey’s will “was simply overborne,” and that his statements could not be used against him at trial. Id. at 401-02, 98 S.Ct. 2408.
Mincey, unlike John, unequivocally invoked his right to counsel. And here, the district court found that John’s ability to think clearly was not impaired. But John’s statements—comprised predominantly of assertions made by Special Agent Hale, to which John merely agreed by nodding his head—were in some respects less a product of free will than Mincey’s own written statement, and, while not incoherent, were in part factually suspect.[2] I would therefore hold that the district court erred in admitting John’s statements to Agent Hale.
2. Next, I would conclude that the district court abused its discretion in permitting testimony from nine separate witnesses regarding John’s previous incidents of domestic violence against Henry over a “12-year period of abuse.” Federal Rule of Evidence 404(b) states that evidence of prior acts “is not admissible to prove a person’s character in order to show that on a particular occasion the person acted in accordance with the character,” but may be admissible “for another purpose, such as proving motive, opportunity, [or] intent.”[3]
*598 Notably, the government essentially acknowledged in its pretrial briefing that it intended to rebut the defense’s theory of the case by arguing that John acted in conformity with a violent predisposition: “The defendant’s prior acts of violence against the victim show that it was the defendant, and not some third party intruder who killed the victim.” The government similarly argues on appeal that the evidence was necessary to “show Defendant’s identity as the perpetrator.” These arguments rest on precisely the type of predisposition inference that Rule 404(b) is intended to preclude.
The majority holds that evidence of John’s prior bad acts was admissible at trial because it helped to prove “motive, opportunity or intent.” We have held that previous acts of domestic violent may evince an intent to murder the victim of those prior acts. See United States v. Lewis, 837 F.2d 415, 418-419 (9th Cir. 1987). I would hold Lewis inapposite for two reasons. First, as we emphasized in Lewis, the relevant prior acts must be “close enough in time to be relevant” to prove intent. Id. at 419, 98 S.Ct. 2408. That cannot be said of much of the prior-act evidence in this case. For example, the testimony of McDaniel John (to which Willard John objected at trial) concerned acts of violence at least nine years before Henry’s death. Second, the defendant in Lewis had admitted to previous acts of violence against the victim, bolstering our conclusion in that case that the evidence was not overly prejudicial to the defendant. Here, the government called nine witnesses to testify to John’s previous abuse of Henry, to which he did not admit at trial. The prejudice of such voluminous testimony almost surely outweighed any probative value with respect to intent.
3. Lastly, I would hold that the district court plainly erred in admitting Henry’s out-of-court statement to her physical therapist identifying John as the cause of injuries to her face and body. That statement was definitely inadmissible hearsay, as it did not fall within the exception of Federal Rule of Evidence 803(4).
The advisory note to Rule 803(4) cautions that “statements of fault” ordinarily do not fall under the rule’s exception for statements made for medical diagnosis or treatment. Such a statement of fault may be admitted in one limited circumstance: when the statement identifies a sexual abuser. United States v. Yazzie, 59 F.3d 807, 812 (9th Cir. 1995). “Sexual abuse involves more than physical injury; the physician must be attentive to treating the victim’s emotional and psychological injuries, the exact nature and extent of which often depend on the identity of the abuser.” United States v. George, 960 F.2d 97, 99-100 (9th Cir. 1992). No sexual abuse was at issue here. More importantly, a physical therapist would not be expected or trained to treat emotional or psychological injuries. The identity of an abuser would thus not be relevant to the physical therapist’s diagnosis or treatment. United States v. Hall, 419 F.3d 980, 987 (2005) is not to the contrary, as the relevant statement in Hall was made to a physician, who could reasonably be expected to treat emotional and psychological injuries.
For the foregoing reasons, I respectfully dissent.

. We review the voluntariness of a confession de novo. United States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002).

. The prosecution emphasized John's statement in its closing argument, contending that while John had two opportunities to "speak” to Special Agent Hale, he did not state at the time that another person had committed the crime, as he would argue at trial. Thus, the government used John’s statements not only for what John "said” to Special Agent Hale, but what he did not say, in spite of his inability to speak and his professed difficulty in remembering the incident.

. If the proffered evidence falls into one of these categories, the advisory notes to Rule 404(b) instruct the district court to make a *598 determination as to "whether the danger of undue prejudice outweighs the probative value of the evidence” under Rule 403.