**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William JENKINS, Defendant-Appellant.**

No. 76–2365.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 10, 1977.

Decided May 4, 1977.

784

Thomas E. Jackson, John W. Tapp, Frederick L. Miller, William Jenkins, Detroit, Mich., for defendant-appellant.

Philip VanDam, U. S. Atty., Harold Z. Gurewitz, Detroit, Mich., for plaintiff-appellee.

Before CELEBREZZE and LIVELY, Circuit Judges, and SILER *, District Judge.

PER CURIAM.

The defendant was convicted in the District Court on three counts of violating 18 U.S.C. § 1361.[1] The indictments charged

---

* Honorable Eugene E. Siler, Jr., United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation.

1. 18 U.S.C. § 1361 provides in part:

    Whoever wilfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States or any department or agency thereof, shall be [guilty of an offense against the United States].

him with causing others to enter and trespass upon Government-owned real property, that is, vacant houses owned by the Department of Housing and Urban Development (HUD).

During 1973–74, HUD was repairing and selling in Detroit some houses which it had acquired from lending institutions pursuant to its Federal Housing Administration mortgage insurance program following default and foreclosure. Any licensed realtor was allowed to show these houses to potential buyers for the purpose of sale. Occupancy of these properties prior to closing of sales was not permitted, except in special situations, none of which applied in this case.

The defendant, a realtor, showed prospective buyers three of these homes,[2] quoted them a sales price, accepted and apparently kept down payments of $300.00 to $750.00, gave them keys to the houses and told them to move in. As HUD had not granted authority for them to move in, when it discovered that the houses had tenants before the closings had been effected, it advised the occupants they could not remain and expended sums of money on legal fees[3] for eviction proceedings for all three houses. In each case, HUD attempted unsuccessfully to qualify the tenants to purchase the property occupied. No physical damage to the homes during these occupancies was proven at the trial.

In overruling the motions for judgment of acquittal, one at the close of the Government's case and another after the verdict,[4] the court ruled that the defendant's causing the unlawful occupancy, thereby requiring the Government to expend sums of money for eviction, amounted to depredation under the statute.

The trial court held and so instructed the jury that "A trespass resulted in a continu-ing adverse occupation of real estate in a manner which prevents the owner thereof from exercising the rights and benefits of ownership for a significant period of time may constitute such a change in condition of the property as to constitute an injury or depredation thereof, whether or not the condition of the property remains adversely changed upon the ultimate recovery of possession by the owner."

■ With this we cannot agree. This is clearly a case which should have been brought in state court for fraud or obtaining money under false pretenses. Instead, we are called upon to stretch the limits of this statute to encompass such a factual situation, which cannot be done. Rather, the courts must strictly construe the criminal laws. See, e. g., *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

This statute has been used in cases involving the taking of fixtures from a building, *Edwards v. United States*, 361 F.2d 732 (8th Cir. 1966); unauthorized logging in a national forest, *Magnolia Motor and Logging Co. v. United States*, 264 F.2d 950 (9th Cir.), *cert. denied*, 361 U.S. 815, 80 S.Ct. 54, 4 L.Ed.2d 61 (1959); or damaging Selective Service files, *United States v. Donner*, 497 F.2d 184 (7th Cir.), *cert. denied*, 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 641 (1974); *United States v. Eberhardt*, 417 F.2d 1009 (4th Cir. 1969), *cert. denied sub nom. Berrigan v. United States*, 397 U.S. 909, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970). However it has never been applied to the type of factual situation presented here. Nor should it be, for it simply does not apply to the facts of this case.

■ As there was no physical damage to the property, there cannot be an "injury" thereon. Thus, the issue is whether a "dep-

---

2. The defendant showed *four* prospective buyers to the houses, but the count for one of these was dismissed on motion for judgment of acquittal. The court below found there was no evidence of expenses in connection with the eviction of the fourth occupant, so no depredation had been proven.

3. As two of the legal fees exceeded $100.00 and the other was for less than $100.00, the defendant was convicted on two felony counts and one misdemeanor count.

4. As the defendant offered no proof, he did not make another motion for judgment of acquittal.

redation" was committed under these facts. The statute does not define "depredation," so one must find the dictionary or common meaning of the word. Webster's *New World Dictionary* (2d College ed. 1970) defines "depredation" as "the act or an instance of robbing, plundering, or laying waste." It was similarly defined in *Deal v. United States,* 274 U.S. 277, 283, 47 S.Ct. 613, 71 L.Ed. 1045 (1927), citing *Century Dictionary,* as " 'the act of plundering; a robbing; a pillaging.' " We feel that is still a correct definition.

Therefore, the judgment below is vacated and this matter is remanded to the District Court to enter a judgment of acquittal on all counts of the indictment upon which the defendant was convicted.