**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Frederick YAZZIE, Defendant–Appellant.**

No. 93–10488.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 16, 1994 *.

Decided June 9, 1995.

---

\* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4.

Sandra Lynn Slaton, Phoenix, AZ, for defendant-appellant.

Mary H. Murguia, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee.

Before: CHOY, FARRIS, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Defendant–Appellant Frederick Yazzie appeals from a jury verdict finding him guilty on fourteen counts of sexual abuse on and abusive sexual contact with his nine-year-old stepson (the victim). In his appeal, we consider several evidentiary rulings made by the district court, which Yazzie contends were erroneous and violated his rights under the Confrontation Clause and his right to a fair trial.

## I.

The events of this case were triggered by an accusation made by Patrick Yazzie, Frederick Yazzie's mentally retarded brother, during a visit to the Indian hospital in Chinle, Arizona on June 18, 1992. Patrick Yazzie told the treating doctor that Yazzie was sexually abusing the victim. The doctor notified the Navajo Tribal Social Services regarding the allegation and a social worker was sent out to the Yazzie family's home. At that time, the victim denied any abuse.

As follow-up, another social worker took the victim in for a medical examination with Dr. Heather Wolfe. As part of the medical examination, Dr. Wolfe questioned the victim about the allegations of abuse. The victim again denied that Yazzie was abusing him. While Dr. Wolfe was interviewing the victim, she received a note from Sarah Yazzie, the victim's mother, who was in the waiting room. The note stated, "Doctor, [the victim] has been brain-washed. Step-dad brain-washed him. I ask help, please, I don't have nobody to trust. Sarah Yazzie." When Dr. Wolfe went to talk to her, Sarah Yazzie had written another note asking the doctor not to let the victim see the note because he would tell Yazzie.[1]

---

1. Specifically, the note said "Don't let [the vic-　tim] see this note, he will tell his step-dad.

At that point, Dr. Wolfe asked Sarah Yazzie to elaborate. Sarah Yazzie then described to Dr. Wolfe a history of Yazzie's extensive sexual abuse of the victim. At trial, Dr. Wolfe recounted that Sarah Yazzie had described that she "had seen Frederick sucking [the victim's] dick and [the victim] sucking Frederick's dick[,]" and that "she had seen Frederick and the victim in bed together, and she had seen Frederick with his penis behind [the victim's] butt and a jar of Vaseline beside the bed." Sarah Yazzie had told Dr. Wolfe that episodes such as these had been occurring almost daily since about 1987. Dr. Wolfe's physical examination of the victim yielded findings of physical injuries consistent with sexual abuse and the history reported.

At that point, Navajo Criminal Investigator Ivan Tsosie was brought in to interview Sarah Yazzie and the victim. Sarah Yazzie again related extensive and detailed accounts Yazzie's sexual abuse of the victim, which took place over several years. Investigator Tsosie then interviewed the victim. After initially denying abuse, the victim gave detailed descriptions of continued sexual abuse by Yazzie. In separate interviews, both the victim and Sarah Yazzie described how Yazzie used lewd magazines, Vaseline, and a penis enlargement pump to perpetrate the reported sexual assaults on the victim. They told Investigator Tsosie where in the house he could find the materials. Based on this information, the FBI searched Yazzie's home and seized many lewd magazines, Vaseline, a penis pump, and tissue with semen on it.

In later interviews, FBI agent Jim Brown was able to determine specific dates and episodes of sexual abuse, including fondling, oral copulation, and anal penetration.

Later, Sarah Yazzie recanted her original statements to the social workers and FBI officials, stating that if called to testify, she would testify that Patrick Yazzie, not Frederick Yazzie, had sexually abused the victim. Based on Sarah Yazzie's repudiation of her earlier statements, the district court ruled that the government could not call Sarah Yazzie as a witness. During the trial, Sarah Yazzie's notes and statements to Dr. Wolfe

Where we and Bobbie she [sic]. Sarah J. Yaz-

were admitted under the medical examination exception.

In his defense, Yazzie sought to introduce the testimony of Petoria Smith, Yazzie's "cousin-sister," regarding certain events involving Patrick Yazzie and the victim. Yazzie argued that these incidents demonstrated that it was Patrick Yazzie who was abusing the victim. The trial judge did not allow Smith's testimony to be admitted as substantive evidence because Yazzie did not comply with the notice requirements of Federal Rule of Evidence (Rule) 412. The trial court did allow Smith's testimony for the limited purpose of impeaching the testimonies of Patrick Yazzie and the victim.

The jury found Yazzie guilty on all counts charged. Yazzie timely appeals.

## II.

■ Yazzie argues that the trial judge erred by admitting lewd magazines and a penis enlargement pump. He claims (1) that these materials were irrelevant under Rule 401; (2) that they should have been excluded as improper character evidence under Rule 404(b); and (3) that they should have been excluded as unduly prejudicial under Rule 403. We review the district court's decision to admit evidence for abuse of discretion. *See United States v. Lim*, 984 F.2d 331, 335 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993).

## A.

Yazzie claims that since ownership or use of these materials neither proves nor disproves whether he molested the victim, they are irrelevant. This argument misstates the parameters of relevancy and the reasons for which the materials were admitted. Evidence is relevant if it has " 'any tendency to make the existence of any fact that is of consequence more or less probable....' " *United States v. Blaylock*, 20 F.3d 1458, 1463 (9th Cir.1994) (quoting Fed.R.Evid. 401).

■ The materials at issue were relevant to the manner in which the abuse occurred

zie."

and to the victim's credibility. First, the magazines and pump were instrumentalities of Yazzie's abuse of the victim. The victim reported that Yazzie had shown him the magazines on several occasions prior and subsequent to the sexual assaults. In addition, the victim testified that Yazzie had used the penis pump both on the victim and himself during the episodes of sexual abuse. The magazines and pump, therefore, were admissible as demonstrative or "real" evidence of the manner in which the assaults were committed.

■ Second, Yazzie had denied the victim's reports of abuse. The materials, which were found pursuant to a search warrant where the victim described them, corroborated the victim's descriptions of the abuse. For these reasons, the magazines and pump made the victim's accounting of the episodes of abuse more probable and the district court properly admitted them as relevant evidence.

### B.

■ Next, Yazzie claims that if generally relevant under Rule 401, the evidence was prohibited by Rule 404(b) because it was impermissible character evidence. Again, this argument mischaracterizes the purpose for which the materials were introduced. They were not introduced to show that Yazzie was sexually deviant and, therefore, more likely to be a child molester. Nor were they introduced, as the Government suggests, as evidence of "*other* crimes, wrongs, or acts" to prove "defendant's knowledge, intent, motive and common scheme or plan," pursuant to Fed.R.Evid. 404(b) (emphasis added). Rather, these materials were admitted because the district court found, based on the victim's testimony, that "[the materials] were used to stimulate [the victim], arouse him...." The materials were introduced as demonstrative or "real" evidence, relevant to how Yazzie sexually assaulted the victim. Rule 404(b) is, therefore, inapplicable.

### C.

■ The only question remaining regarding the admission of the magazines and penis pump is whether the evidence should

nevertheless have been excluded under Rule 403. Otherwise admissible evidence can still be excluded if its probative value is substantially outweighed by the danger of *unfair* prejudice. Fed.R.Evid. 403; *see also United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir.1987). Evidence is unfairly prejudicial if it "makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart from its judgment as to his guilt or innocence of the crime charged.*" *Johnson*, 820 F.2d at 1069 (emphasis added).

As discussed above, the materials in question are extremely probative of the victim's credibility and of how the assaults were committed. Next, we consider whether the materials had an unfair prejudicial effect and whether that effect substantially outweighed the highly probative nature of the evidence. Yazzie focuses his unfair prejudice argument on the homosexual implications of the Playgirl magazines. In support of his argument, Yazzie cites cases in which evidence of homosexuality was found to be improperly admitted. *See United States v. Gillespie*, 852 F.2d 475, 478–79 (9th Cir.1988); *Cohn v. Papke*, 655 F.2d 191, 194 (9th Cir.1981); *United States v. Birrell*, 421 F.2d 665, 666 (9th Cir. 1970).

In the cases upon which Yazzie relies, however, homosexual issues were raised as collateral to the crimes charged. By contrast, in this case the magazines were introduced as direct evidence of how the assaults were perpetrated and as corroborative evidence of the victim's account of the abuse. It is unlikely they distracted the jury from the defendant's guilt or innocence so as to be unfairly prejudicial. *Cf. United States v. McInnis*, 976 F.2d 1226, 1231–32 (9th Cir.1992) (allowing evidence of defendant's possession of swastikas and other racist materials to demonstrate racial animus, which was an element of the crime); *United States v. Garot*, 801 F.2d 1241, 1246–47 (10th Cir.1986) (affirming admission of child pornography photographs to show scienter).

■ While evidence of homosexuality can be extremely prejudicial, *see United States v. Gillespie*, 852 F.2d at 479, only when the

evidence's unfair prejudice *substantially outweighs* its probative value is exclusion necessary. This case is a far cry from the situations in which we have held that unfair prejudice from physical evidence which was only tangentially related to the crime substantially outweighed its probative value. *See, e.g., Gillespie,* 852 F.2d at 479 (evidence that appellant slept in the same bed as his adoptive father merely raised an inference of appellant's homosexuality, but did not assist the trier of fact in deciding whether defendant was guilty); *Cohn,* 655 F.2d at 193–94 (evidence of prior homosexual experiences had minimal probative value regarding whether appellant was soliciting act of prostitution and therefore was improperly admitted in light of its highly prejudicial effect).

Since the magazines and a penis enlargement pump directly related to Yazzie's guilt for the crimes charged, the district court properly allowed them to be admitted.

### III.

■ Yazzie next challenges the government's introduction of Sarah Yazzie's out-of-court statements to Dr. Wolfe as statements made for the purposes of medical diagnosis and treatment under Rule 803(4). Yazzie contends that these statements were inadmissible hearsay.[2] The admission of such unreliable hearsay, Yazzie argues, violated his rights under the Confrontation Clause.

■ Hearsay statements used against Yazzie over his objection would only violate the Confrontation Clause if they were not admitted under a well-recognized exception to the hearsay rule or the court failed to make a finding that the statements were otherwise reliable. *See Idaho v. Wright,* 497 U.S. 805, 817, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638 (1990); *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d

597 (1980). We review the district court's decision to admit Sarah Yazzie's statements as an exception to the hearsay rule for abuse of discretion. *United States v. Bland,* 961 F.2d 123, 126 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992). Alleged violations of the Confrontation Clause are reviewed de novo. *United States v. George,* 960 F.2d 97, 98 (9th Cir. 1992).

■ Rule 803(4) permits hearsay testimony regarding, "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Generally, statements of fault are not admissible under this exception. However, this Circuit has adopted a special rule for sexual abuse cases because "[s]exual abuse involves more than physical injury; the physician must be attentive to treating the victim's emotional and psychological injuries, the exact nature and extent of which often depend on the identity of the abuser." *George,* 960 F.2d at 99 (citing *United States v. Renville,* 779 F.2d 430, 437 (8th Cir.1985)). "Thus, a child victim's statements about the identity of the perpetrator are admissible under the medical treatment exception *when they are made for the purposes of medical diagnosis and treatment.*" *People of the Territory of Guam v. Ignacio,* 10 F.3d 608, 613 (9th Cir.1993) (emphasis in original).

These cases do not directly control the outcome of this case: Sarah Yazzie was the mother of the victim-patient, not the patient. The admission of Sarah Yazzie's statements, therefore, presents us with a situation that has not been previously contemplated by this Circuit.

**2.** Yazzie also argues that Sarah Yazzie's statements to the investigators and the social worker were improperly admitted. These claims are ill-founded. The prosecution specifically avoided attempting to elicit any hearsay statements from Nancy Weeka, the social worker. The prosecution asked, "[W]ithout saying what she said to you, what was her demeanor when she spoke with you on the three different occasions after she had been there?" Similarly, Investigator

Tsosie was precluded from testifying about his conversation with Sarah Yazzie and Agent Brown was not asked any questions about statements made by her. Since the testimony of Weeka, Investigator Tsosie, and Agent Brown did not include any statements or expressive conduct by Sarah Yazzie, there is no hearsay issue and consequently no Confrontation Clause issue with respect to any of these witnesses.

The plain language of the Rule does not limit its application to patient-declarants. *See* M. Graham, Federal Practice and Procedure: Evidence, § 6755, at 296 (Interim Edition); Strong, 2 McCormick on Evidence, § 277 (John William Story, ed. 1992). In most circumstances, we believe that statements to a doctor by a parent of an injured child could easily qualify as a statement for the purpose of obtaining a proper medical diagnosis.

A parent's statement to a doctor identifying the assailant in a child molestation case must be treated as suspect. Indeed, one of the most bitter ironies of these cases is that the perpetrators are usually parents or relatives who are supposed to act in the child's best interest. *See Judy Yun, Note, A Comprehensive Approach to Child Hearsay Statements,* 83 Col.L.Rev. 1745 (1983) ("Most often, the [sex] offender is a relative or close acquaintance of the child. . . ."). In the drama that unfolds during the medical examination of a child molestation victim, a parent or guardian's motive for casting blame may or may not be in the child's best interest or for the purpose of medical diagnosis. For example, a parent might misidentify the assailant in an effort to protect the other spouse, to avoid reprisal from the other spouse, to avoid having suspicion cast upon him or her, or to incriminate falsely the other spouse for personal motives.

Since child molestation cases challenge our assumptions about why certain statements might have been made, inquiry into the declarant's purpose must be exacting. When a party seeks to introduce the statement of parent or guardian identifying a sex offender, the proponent must demonstrate from the context and content of the statements that they were made for the purpose of medical diagnosis or treatment.

In this case, careful examination of the record demonstrates that Sarah Yazzie's first note and later statements to Dr. Wolfe were made for the purpose of aiding the doctor's diagnosis of the victim. We first address the Government's argument that Dr. Wolfe's testimony qualifies Sarah Yazzie's statements for the medical exception. Dr. Wolfe testified that the history and information about how the abuse occurred, including identification of Yazzie, was relevant and important to her manner and course of treatment of the victim. Dr. Wolfe's belief, while helpful to our analysis, is not sufficient to qualify Sarah Yazzie's notes and statements for the medical treatment exception. *See Ignacio,* 10 F.3d at 613 n. 3. The *declarant's* self-interest in proper diagnosis provides the indicia of reliability. *See* Fed.R.Evid. 803(4), Advisory Committee's Note (The *"patient*[ ] [has a] strong motivation to be truthful[,]" to secure proper diagnosis and treatment.) (emphasis added).

Determining whether Sarah Yazzie's purpose was to obtain proper medical treatment for her son requires examination of the content of the notes and statements, and the context in which they were made. When they arrived at the clinic, Sarah Yazzie told Dr. Wolfe that they had come to see a doctor because of sexual abuse. In the first note, Sarah Yazzie demonstrated that she knew her son was denying abuse, and explained why he was denying abuse ("Step-dad brainwashed him."). She also pleaded with the Dr. Wolfe to help her and her son ("I ask help, please[.]"). These words express concern for her son and desire to obtain help for him from Dr. Wolfe. In addition, her later descriptions of the manner, duration, and frequency of Yazzie's abuse were necessary for treatment since the victim was denying abuse.

Sarah Yazzie's concern for her son at the time of her visit to Dr. Wolfe's office was also demonstrated by her demeanor. Dr. Wolfe testified that Sarah Yazzie appeared very fearful when she was describing Yazzie's sexual abuse of the victim. In the absence of any other evidence of improper motivation, these facts compel the conclusion that Sarah Yazzie's first note and later descriptions of abuse were made for medical purposes, and were properly admitted under the medical treatment exception.

We caution that not all statements made by a parent or guardian to a doctor are made for medical purposes, even if they are made in a clinical setting. For example, with respect to Sarah Yazzie's sec-

ond note, the same medical purpose cannot be inferred. The second note implored Dr. Wolfe to conceal Sarah Yazzie's accusations about Yazzie from the victim. Sarah Yazzie's desire to have the note concealed appears to have been motivated by fear of retribution from Yazzie, not a desire to obtain proper medical treatment for the victim. Moreover, a request that Dr. Wolfe conceal the note was not "reasonably pertinent to diagnosis or treatment[,]" as required by Rule 803(4). While Sarah Yazzie probably had good reason for writing the second note, the victim's medical diagnosis and treatment does not appear to have been that purpose. Therefore, the second note does not qualify for the medical examination exception and the district court improperly admitted it. In light of the overwhelming evidence of Yazzie's guilt, however, its admission was harmless error. *See United States v. Endicott,* 803 F.2d 506, 513 (9th Cir.1986).

## IV.

■ Yazzie's final contention is that he was denied a fair trial because he was precluded from introducing Petoria Smith's exculpatory testimony as substantive evidence. He was allowed to introduce her testimony, but only for the purpose of impeaching the testimony of the victim and Patrick Yazzie. The district court imposed this limitation because defense counsel did not comply with the notice requirements of Rule 412(c)(1) & (c)(2).

Yazzie claims that he did not need to provide notice either because evidence about the identity of the assailant is not evidence of "past sexual behavior" of the victim under Rule 412, or because his ability to introduce such evidence is constitutionally required. We agree that Yazzie did not seek to introduce Smith's statements about possible sexual episodes between the victim and Patrick Yazzie to demonstrate "past sexual behavior" within the meaning of Rule 412.

Rule 412 defines "past sexual behavior" as "sexual behavior *other than* the sexual behavior with respect to which an offense under chapter 109A of title 18, United States Code is alleged." Fed.R.Evid. 412(d) (emphasis added). In other words, " 'Rule 412(d) de-

fines "past sexual behavior" to include all sexual conduct other than the rape or assault that is in issue.' " *United States v. Torres,* 937 F.2d 1469, 1472 (9th Cir.1991) (quoting 23 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5384, at 541 (footnotes omitted) (1980)), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992). Yazzie sought to introduce evidence of the victim's encounters with Patrick Yazzie to show that it was Patrick Yazzie, not Frederick Yazzie, who committed *the assaults at issue.* Yazzie was not seeking to introduce the evidence as *past* behavior that was *other than* the offense charged. Consequently, Smith's testimony was not subject to the requirements of Rule 412.

This application is consistent with the purpose of Rule 412. One of the primary purposes of the Rule is " 'to protect rape victims from the degrading and embarrassing disclosure of intimate details about their private lives.' " *Torres,* 937 F.2d at 1492 (citing 124 Cong.Rec.H. 11944 (daily ed. Oct. 10, 1978) (statement of Rep. Mann)), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 886, 116 L.Ed.2d 789 (1991); *see also* 124 Cong.Rec.H. 11944 (daily ed. Oct. 10, 1978) (statement of Rep. Mann) (describing that evidence of past sexual behavior "quite often serves no real purpose and only results in embarrassment to the rape victim and unwarranted public intrusion into her private life"). In this case, and generally when a defendant wants to introduce evidence that he has been mistakenly identified as the perpetrator, the purpose of the evidence is quite real. Moreover, evidence of mistaken identity cannot further intrude into the victim's private life since the sexual attack is already the center of a public trial.

■ Although Smith's testimony was outside the scope of Rule 412 and therefore improperly limited, the error was harmless. Yazzie claims that Smith's testimony was "totally exculpatory in nature and completely consistent with Appellant's proclamations of innocence." This claim dramatically overstates the value of Smith's testimony, which was dubious at best. She testified that, in response to hearing shouting, she entered a room in which the victim was only semi-

clothed and Patrick Yazzie had his pants undone. When she asked what was going on, Patrick Yazzie fell to the ground and started shaking. She also testified to a similar incident a few months later.

Even if this evidence had been admitted for its substantive content, its ability to exculpate Yazzie is tenuous. Smith's testimony does not contradict the victim's extensive accountings of sexual abuse on fourteen separate occasions by Yazzie. Since Smith's testimony would have done little to demonstrate that Yazzie did not sexually assault the victim, the district court's erroneous exclusion of it was harmless.

**AFFIRMED.**