85 F.3d 639
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony REBICH, Defendant-Appellant.
 No. 95-30177.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1996.
Decided May 8, 1996.
 
 Before: FLETCHER, NOONAN, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Anthony Rebich appeals from a judgment of conviction, entered against him after a jury trial, for purloining a mule deer belonging to the United States, for knowingly concealing the deer or parts thereof, for depredation of the deer, and for trespassing on a wildlife refuge. We have jurisdiction under 28 U.S.C. § 1291.
 
 I. Sufficiency of the Evidence
 
 3
 Because Rebich moved for acquittal under Fed.R.Crim.P. 29(a) on the ground of insufficient evidence below, we review the record, viewing the evidence in the light most favorable to the prosecution, to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Vgeri, 51 F.3d 876, 879 (9th Cir.1995).
 
 A. Depredation
 
 4
 Rebich argues that the evidence is not sufficient to sustain his conviction for violating 18 U.S.C. § 1361 because his killing of the deer could not have been a willful depredation of government property since he did not know the deer was on government land until after he fired on it. Rebich is correct that, from the evidence presented, no rational trier of fact could find beyond a reasonable doubt that Rebich knew the deer was on the National Bison Range when he shot it. Indeed, counsel for the government acknowledged as much at oral argument. However, the evidence of his subsequent conduct is sufficient to establish his willful depredation. That evidence shows that Rebich knew the deer was on government land immediately after he shot it, as his order to Rasmussen not to shoot another deer demonstrates. A factfinder could conclude from Rasmussen's and Pinelli's testimony that Rebich, knowing this, returned under cover of darkness, climbed the Range's eight-foot-high boundary fence, severed the deer's head, dragged it over the fence and to the road, loaded it in his truck, and drove home. These acts, no less than the actual shooting itself, constitute a depredation of property. See United States v. Jenkins, 554 F.2d 783, 785-86 (6th Cir.1977) (depredation in § 1361 means robbing, plundering, pillaging, or laying waste).
 
 
 5
 Thus, the evidence is sufficient to convict Rebich for depredation based not on the killing of the deer but only for severing and stealing the head. The jury, however, in connection with the charge of concealing the parts of the deer that had been stolen, found that the value of what Rebich concealed was less than $100. Since Rebich had stolen and concealed only the head, the jury necessarily determined that the value of the head was under $100. Therefore, the evidence was insufficient to convict Rebich of a felony depredation under § 1361, but sufficient to support a misdemeanor conviction under that section. Consequently, Rebich is entitled to have his felony conviction reduced to a misdemeanor and to be resentenced accordingly. United States v. Ellsworth, 647 F.2d 957, 965 (9th Cir.1981) (where evidence insufficient to support guilty verdict of assault with deadly weapon under 18 U.S.C. § 111 but sufficient to support forcible assault under that section, "[t]he conviction can stand, but with a sentence appropriate for the lesser included offense"); Rutledge v. United States, 64 U.S.L.W. 4238, 4242 (U.S. March 27, 1996) (pointing out that "federal appellate courts appear to have uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense" and that it has previously "noted the use of such a practice with approval").
 
 B. 18 U.S.C. § 641
 
 6
 A similar but not identical analysis applies to Rebich's conviction under 18 U.S.C. § 641. Knowledge that the property purloined belongs to the government is not an element of the offense. United States v. Howey, 427 F.2d 1017, 1018 (9th Cir.1970). However, as explained in Morissette v. United States, 342 U.S. 246 (1952), criminal intent is an element of the offense. As counsel for the government acknowledged at oral argument, Rebich's shooting of the deer would not have been wrongful had the deer not been on the game reserve; the shooting was not out of season or in any other way prohibited. Therefore, in this case, the absence of proof of Rebich's knowledge that the deer was on government property when he shot it makes it impossible to sustain Rebich's felony conviction under § 641 for the shooting of the deer because the evidence is insufficient to support a finding of criminal intent. As with the depredation count, however, the evidence is sufficient to support a conviction under § 641 for Rebich's severing the deer's head and stealing it, but that conviction can only be for a misdemeanor since the jury necessarily found that the value of the stolen head was less than $100. See Ellsworth, 647 F.2d at 965; Rutledge, 64 U.S.L.W. at 4242.
 
 II. Franks Hearing
 
 7
 We review de novo a district court's denial of a hearing into the veracity of an affiant whose affidavit was used in support of an application for a search warrant. United States v. Meling, 47 F.3d 1546, 1546 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 130 (1995). When a defendant alleges "deliberate or reckless omissions of facts that tend to mislead", a district court must hold such a hearing if the defendant makes "a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading". United States v. Stanert, 762 F.2d 775, 780-81 (9th Cir.), as amended, 769 F.2d 1410 (1985). Thus, a defendant must "show that the affidavit purged of those falsities and[/or] supplemented by the omissions would not be sufficient to support a finding of probable cause". Stanert, 762 F.2d at 782.
 
 
 8
 A. Statements Made During Execution of Search Warrant
 
 
 9
 Rebich alleges that he is entitled to a Franks hearing because the officers failed to inform the magistrate that Rasmussen's statements were made in an interview with the officers during or shortly after a search of Rasmussen's home in connection with suspicion of game violations unrelated to the killing of the deer.
 
 
 10
 The government contends that this allegation challenges only the veracity of Rasmussen, rather than the affiant. See, e.g., United States v. Perdomo, 800 F.2d 916, 921 (9th Cir.1986). This appears to reflect a misunderstanding of the claim. While the inclusion of the challenged information might indeed reflect on Rasmussen's credibility, the gravamen of Rebich's argument is that "[b]y reporting less than the total story", Darrah and Branzell may have attempted to "manipulate the inferences a magistrate will draw". Stanert, 762 F.2d at 781.
 
 
 11
 Nonetheless, this allegation did not entitle Rebich to a Franks hearing because the affidavit, supplemented by the omissions, would still support a finding of probable cause. While the information that Rasmussen's statement was made (after a Miranda warning) during the investigation of unrelated state poaching charges would probably have led the magistrate judge to consider the reliability of that statement more carefully, that information would not make Rasmussen's statement inherently unreliable, and such a supplemented application would still support a finding of probable cause. Rasmussen claimed to be an eyewitness to the killing and to have accompanied Rebich on the trip to retrieve the deer's head; thus, his information was first-hand. In addition, Rasmussen's information that the antlers were still in Rebich's garage was also obtained first-hand and only a week prior to the interview.
 
 
 12
 B. Size of Antlers & Rasmussen's Sighting the Previous Week
 
 
 13
 The application stated that Rasmussen told the officers that the deer Rebich shot was "a large four or five point mule deer buck". E.R. Tab I, Attachment No. 5, p. 3. Rebich alleges this was an omission or misstatement because Rasmussen stated that the deer might have been a four- or five-point deer but that he wasn't sure. Rebich has made no showing that the statement in the application was necessary to a finding of probable cause. Rasmussen's subsequent statements about the location of the antlers do not depend on their size to identify them; he indicated that the rack he had seen Rebich retrieve from the National Bison Range was located, one week prior to his statement, on the top of the refrigerator in the garage at Rebich's residence in Butte, Montana, and that it was the only rack of antlers in that location. The omission of Rasmussen's alleged uncertainty as to the exact size of the deer shot did not entitle Rebich to a Franks hearing.
 
 
 14
 Rebich also contends that the officers failed to include in the application the fact that Rebich was in Great Falls, Montana. No such omission occurred: the application states that Rasmussen told the officers that "Rebich and his wife were in Great Falls" and that their "daughter was taking care of the residence" in Butte.
 
 C. Unnamed Informant
 
 15
 Rebich notes that the application for the search warrant provides only the bare conclusory statement that the unnamed informant has proven reliable in the past and offers no suggestion as to how the informant acquired the information he passed on. See, e.g., United States v. Landis, 726 F.2d 540, 543 (9th Cir.), cert. denied, 467 U.S. 1230 (1984); Stanert, 762 F.2d at 782. This is essentially a challenge to the sufficiency of the application to support the determination of probable cause--a challenge Rebich has not made in this appeal--rather than a showing that a Franks hearing is justified. Rebich has offered no specific allegations as to facts regarding the unnamed informant that the officers deliberately or recklessly omitted and that would have been material to a finding of probable cause. United States v. Dicesare, 765 F.2d 890, 894-95 (9th Cir.), as amended, 777 F.2d 543 (1985). In any case, the statement of the unnamed informant was not material to the finding of probable cause, as is necessary to entitle Rebich to a Franks hearing, since Rasmussen's statements standing alone are sufficient to support the probable cause finding.[1]
 
 III. Confrontation Clause
 
 16
 We review de novo alleged violations of the Sixth Amendment Confrontation Clause, United States v. Yazzie, 59 F.3d 807, 812 (9th Cir.1995), as well as whether limitations on cross-examination are so severe as to violate the Confrontation Clause, United States v. Gil, 58 F.3d 1414, 1421 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 430 (1995). "Although our review is de novo, we nonetheless recognize that trial courts in the conduct of trials have considerable discretion as to ... what questions may be asked provided a fair trial is had." United States v. Jenkins, 884 F.2d 433, 435 (9th Cir.), cert. denied, 493 U.S. 1005 (1989). To state a claim for a violation of the Confrontation Clause, Rebich must show that he was "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' " Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986) (quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)).
 
 
 17
 Rebich's essential claim is that the district court barred him from cross-examining Rasmussen as to details of pending state charges of poaching against Rasmussen. In particular, Rebich argues that his inability to question Rasmussen as to the possibility that a conviction for the poaching charges would subject him to enhanced sentencing as a persistent felony offender prevented him from demonstrating to the jury the extent of Rasmussen's motives to cooperate with authorities, motives that might reflect adversely on the credibility of Rasmussen's testimony. The district court's ruling on inquiries with respect to the pending state charges did not deprive the jury of "sufficient information to appraise the biases and motivations" of Rasmussen, McClintock, 748 F.2d at 1290, given the scope of cross-examination that the district court allowed. Rasmussen testified that he had been arrested the previous September for poaching black bears. When asked whether he had entered a plea on the state charges pending against him, Rasmussen invoked his Fifth Amendment rights; he similarly refused to answer the question of whether a trial date had been set. Rebich was also allowed to ask Rasmussen whether any promises had been made by law enforcement in return for his cooperation, whether any threats were made by law enforcement to secure that cooperation, and whether he had received any immunity. In addition, Rebich was allowed to bring out for the jury the fact that Rasmussen's statement implicating Rebich was made at the time of Rasmussen's arrest on the poaching charges and the search of his house, as well as Rasmussen's testimony that he identified Rebich only after the officers had mentioned Rebich's initials. It does not appear that additional cross-examination as to Rasmussen's liability to sentencing as a persistent felony offender--if Rasmussen was indeed subject to such sentencing--would have provided substantially more information to the jury about Rasmussen's possible biases and motivations. Cf. United States v. Dadanian, 818 F.2d 1443, 1449 (9th Cir.1987) (where witness was subject to extensive cross-examination about terms of his agreement with government and his past perjury, questioning about "his maximum jail time exposure" would have been "at best marginally relevant" and district court's failure to allow that questioning did not violate Sixth Amendment rights), rev'd on other grounds on reh'g, 856 F.2d 1391 (1988).
 
 CONCLUSION
 
 18
 The evidence was insufficient to support Rebich's felony convictions under 18 U.S.C. §§ 641 and 1361, but sufficient to support misdemeanor convictions on both counts. We therefore reverse the felony convictions and direct the district court on remand to enter misdemeanor convictions and to resentence Rebich accordingly. The district court properly denied a Franks hearing and its limitation on the cross-examination of Rasmussen did not violate the defendant's rights under the Sixth Amendment.
 
 
 19
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In his appeal brief, Rebich argues as omitted information entitling him to a Franks hearing the statements in Rasmussen's testimony at trial (1) that Rasmussen did not name Rebich until Darrah supplied the initials "A.R." and told Rasmussen that things would go easier on him if he cooperated and (2) that Rasmussen had told Darrah and Branzell that he took Darvocet pain medication that could affect his memory. Appellant's Brief at 19-21. Rebich did not make these arguments to the district court and has offered no explanation of why we should consider these new arguments on appeal. Bolker v. Commissioner, 760 F.2d 1039, 1042 (9th Cir.1985)