108 F.3d 1386
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arlo Rodney ESCHIEF, Defendant-Appellant.
 No. 96-10166.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 11, 1997.
Decided March 10, 1997.
 
 Before: BRUNETTI, FERNANDEZ, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Arlo Rodney Eschief appeals his jury conviction for first degree felony-murder, second degree murder, and use of a firearm during a violent crime, all on an Indian reservation. See 18 U.S.C. §§ 1153, 1111, 924(c). We affirm.
 
 A. 911 Audio Tape
 
 3
 Eschief contends that the court violated Federal Rule of Evidence 403 by allowing the prosecution to play for the jury the entire tape of a conversation between the victim and the 911 operator. Rule 403 explains that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. Nonetheless, Rule 403 speaks only to "unfair" prejudice and does not prohibit the introduction of all emotionally charged evidence. See United States v. Yazzie, 59 F.3d 807, 811 (9th Cir.1995); see also United States v. Carpenter, 933 F.2d 748, 751 (9th Cir.1991). In fact, evidence is unfairly prejudicial only if "it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." Yazzie, 59 F.3d at 811 (citation omitted).
 
 
 4
 No unfair prejudice appears here. The tape was very probative and not overly distracting. It showed that the victim was shot during a robbery, and the tape was not overly emotional. It is not similar to the tape in United States v. Layton, 767 F.2d 549, 551-53 (9th Cir.1985), a case upon which Eschief principally relies. The district court did not abuse its discretion.
 
 
 5
 B. Philbert Antone's Statement Recommending a Subway Robbery
 
 
 6
 Eschief argues that Norval Antone's testimony about Philbert Antone's recommendation that the group rob the Subway was inadmissible. We disagree because the statement was relevant evidence which was not barred by any exception to the rule that relevant evidence is admissible. See Fed.R.Evid. 402. The statement tended to show Eschief's own motive and state of mind when he, while armed with his gun, accompanied Philbert to the Subway store to obtain food and money. The evidence was not hearsay; it was simply evidence of the spring that drove Eschief when he set out on that night's venture. In other words, Norval could testify to what Philbert said because the words (regardless of their truth value) were uttered in the presence of Eschief and tended to show why he accompanied Philbert on that fatal night.
 
 
 7
 C. Exclusion of Valerie Lewis' and Finzer's Testimony
 
 
 8
 Eschief contends that the court abused its discretion when it refused to allow Valerie Lewis or Finzer to testify in his case in chief. Again, we disagree.
 
 
 9
 Valerie Lewis' proffered testimony was about an interrogation of her son, Stephen, a year before Eschief was questioned by the police. That only resulted in an equivocal statement by Stephen which the Detective did not believe was a confession. The testimony had marginal, if any, relevance to this case and was both cumulative and collateral impeachment. See United States v. Higa, 55 F.3d 448, 452 (9th Cir.1995) (discussing collateral impeachment); United States v. Parker, 991 F.2d 1493, 1500 (9th Cir.1993) (discussing cumulative evidence); United States v. Ives, 609 F.2d 930, 933 (9th Cir.1979) ("Cumulative evidence replicates other admitted evidence."). The district court did not abuse its discretion. See Fed.R.Evid. 403; see also United States v. Hernandez, 876 F.2d 774, 778-79 (9th Cir.1989).
 
 
 10
 Similarly, the district court did not abuse its discretion when it held that Finzer's proffered testimony was inadmissible. The first statement Finzer would have testified to was made by Nolan Antone, Jr. when another person, Coulston, fired him. It was simply irrelevant.[1] See Fed.R.Evid. 401. Nolan was not part of the group that robbed Lindsay. Moreover, no one said that Nolan was one of the people present when Philbert recommended robbing the Subway.
 
 
 11
 The second statement, made during Nolan's phone call to the Subway, was simply not admissible because it was hearsay and was not within any exception to the hearsay rule. There is no question that Eschief sought admission of the statement to prove the truth of the matter asserted, that is, that Philbert "did the Subway thing." Thus, the proposed testimony by Finzer was inadmissible hearsay. See Fed.R.Evid. 801.
 
 D. Sufficiency of the Evidence
 
 12
 Finally, Eschief contends that the government presented insufficient evidence of his guilt of murder in the course of robbery. Under 18 U.S.C. § 1153, robbery is defined for purposes of this case by Arizona law. See Ariz.Rev.Stat. § 13-1902; see also State v. Murray, 184 Ariz. 9, 31, 906 P.2d 542, 564 (1995), cert. denied, --- U.S. ----, 116 S.Ct. 2535, 135 L.Ed.2d 1057 (1996). Under 18 U.S.C. § 2, Eschief could be responsible for the robbery as an aider and abettor if he "knowingly and intentionally aided" in the robbery. See also United States v. Dinkane, 17 F.3d 1192, 1196 (9th Cir.1994). Under the evidence in this case, a rational jury could easily find beyond a reasonable doubt all of the elements of robbery and that the murder was committed by Eschief in the course of it.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 It was also arguably not impeaching and partially cumulative, since Coulston had already testified that the atmosphere when she fired Nolan was uncomfortable and that he made many late-night calls to her home