**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Aaron Ross YAZZIE, Defendant—**
**Appellant.**

No. 00–10517.
D.C. No. CR–00–00096–EHC.

United States Court of Appeals,
Ninth Circuit.

Submitted March 12, 2002 *.

Decided March 15, 2002.

* The panel finds this case appropriate for submission without oral argument pursuant to Fed. R.App. P. 34(a)(2).

Before BRUNETTI, LEAVY and T.G. NELSON, Circuit Judges.

## MEMORANDUM **

Defendant–Appellant Aaron Yazzie was convicted of first degree murder in violation of 18 U.S.C. §§ 1151 and 1153 (committed within Indian country). He was sentenced to life imprisonment and now appeals the district court's denial of a motion for new counsel, the admission of evidence of prior bad acts, and admission of hearsay statements.

Appellant argues that the district court erred in: (1) denying his motion for new counsel when he and his attorney had an irreconcilable conflict that denied appellant the right to counsel under the Sixth Amendment; (2) rejecting appellant's motion in limine to bar evidence of irrelevant prior bad acts; (3) admitting hearsay statements under the medical examination exception.

### I.

Defendant Yazzie's contention on appeal is two-fold: he alleges that he was denied his Sixth Amendment right to effective counsel because of an irreconcilable conflict between himself and his appointed trial counsel; and second, that the district court conducted an inadequate inquiry into his complaint regarding counsel and, therefore, erred in failing to substitute counsel. We apply the same test to assess whether the district court erred in failing to substitute counsel as we do in evaluating whether an irreconcilable conflict exists. *United States v. Moore*, 159 F.3d 1154, 1159 n. 3 (9th Cir.1998).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

In reviewing a lower court's denial of a motion to substitute counsel, we evaluate three factors: the timeliness of the motion, the adequacy of the district court's inquiry, and the extent of the conflict. *United States v. Musa,* 220 F.3d 1096, 1102 (9th Cir.2000); *United States v. Gonzalez,* 800 F.2d 895, 898 (9th Cir.1986).

### A. Timeliness of the Motion

█ Defendant Yazzie's motion was not timely given the circumstances of the case. Yazzie's letter to his counsel requesting that she withdraw as counsel and move for substitute counsel was received by Yazzie's counsel on July 18, 2000, seven days before trial was scheduled. Defense counsel had subpoenaed 10–12 witnesses to appear the following Tuesday, the indictment had been returned in February, 2000, and a jury had already been summoned. We have held that "a district court has broad discretion to deny a motion for substitution of counsel on the eve of trial if the substitution would require a continuance." *United States v. Garcia,* 924 F.2d 925, 926 (9th Cir.1991). Due to the seriousness of the offense, the volume of discovery, and the defendant's request for a continuance to review the record, granting the motion would have required a continuance.

### B. Adequacy of the Inquiry

█ The district court conducted an inquiry sufficient to concluded that Yazzie's complaints were without merit. "A trial court may not summarily refuse to allow the substitution of attorneys, but must conduct 'such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern.'" *Id.* (quoting *Hudson v. Rushen,* 686 F.2d 826, 829 (9th Cir. 1982)). The inquiry must provide a "sufficient basis for reaching an informed decision." *United States v. McClendon,* 782 F.2d 785, 789 (9th Cir.1986). We find that the district court's inquiry was as comprehensive as the circumstances reasonably would permit.

The district court held a hearing out of the presence of the prosecutor at which defendant's complaints were aired. The court did not ask only open-ended questions, but asked specific and targeted questions of the defendant to determine why defendant Yazzie wanted to substitute counsel. Cf. *United States v. Adelzo–Gonzalez,* 268 F.3d 772, 776 (9th Cir.2001) (finding that the court could not ascertain the extent of the breakdown in communication where it only asked open-ended questions). The court asked defendant to state what information counsel had failed to investigate, whether Yazzie's counsel had described the evidence that would be presented, and also made inquiries of Yazzie's counsel.

There was no clear indication of any discord between Yazzie and his attorney. *See, e.g., id.* at 778 (finding that there were "striking signs of a serious conflict" between the defendant and his attorney evident by the attorney's actions and statements). The record indicates that Yazzie's counsel was prepared, competent, and had consulted sufficiently with Yazzie regarding the trial and the evidence.

### C. Extent of the Conflict

█ There is no evidence that there was a total lack of communication between Yazzie and his attorney such that Yazzie was unable to present an adequate defense. *Hudson,* 686 F.2d at 832. Yazzie's claim that he did not trust his attorney stemmed from his counsel's recommendation that he accept a plea offer. However, "counsel may advise a defendant to plead guilty if that advice falls within the range of reasonable competence under the circumstances and a pessimistic prognosis by counsel is not a ground for change of

counsel." *United States v. Rogers,* 769 F.2d 1418, 1424 (9th Cir.1985) (internal quotations omitted).

Yazzie also complained that there was inadequate consultation with counsel because they "hardly talk[ed]." Nevertheless, Yazzie stated to the court that his counsel had kept him informed of any information she received and that she had described to him the statements that potential witnesses would be making. Yazzie's counsel also subpoenaed several witnesses. The record reflects that she defended Yazzie fully and forcefully.

■ Yazzie's argument that the district court erred in not granting his pro se motion to change counsel after the jury verdict but prior to sentencing is without merit. Yazzie argues that there was a total lack of communication between him and his attorney. However, Yazzie stated that he had seen his attorney three times, with a visit taking place a few days after trial. Although Yazzie faced a mandatory sentence of life in prison and there was no discretion left to the court, Yazzie's counsel called witnesses, spoke on defendant's behalf, and even requested that Yazzie be placed in a facility in or near Arizona.

## II.

■ Yazzie argues that the district court erred in admitting evidence that during the four months prior to the victim's death he struck her, sprained her thumb, choked her to unconsciousness and threatened to kill her if she told anyone of the abuse or tried to leave him. A district court's decision to admit evidence of prior bad conduct under Federal Rules of Evidence 404(b) is reviewed for abuse of discretion. *United States v. Hinton,* 31 F.3d 817, 822 (9th Cir.1994).

The district court correctly ruled that the testimony regarding Yazzie's previous assaults on the victim satisfied the criteria for admission under rule 404(b). Evidence of a prior bad act may be admitted if: (1) the evidence tends to prove a material element of the crime currently charged; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) the act is similar to the offense charged. *Id.* Yazzie argues that the evidence of prior bad acts does not met the first and four prongs.

We find that all four criteria are satisfied. Intent is clearly an element of first degree murder. *Id.* at 822; *United States v. Quintero,* 21 F.3d 885, 891 n. 3 (9th Cir.1994). Yazzie's defense at trial was that he lacked the intent to kill the victim and, therefore, committed a lesser form of homicide. Evidence of prior incidents involving the same victim are relevant to the issues of motive and intent and have "probative value in disproving [Yazzie's] claims that [he] lacked intent." *United States v. Lewis,* 837 F.2d 415, 419 (9th Cir.1988).

Although Yazzie argues that the prior conduct is not sufficiently similar to first degree murder, the evidence that he struck the victim, threatened to kill her if she told anyone of the abuse, sprained her thumb, and choked her until she was unconscious is part of a pattern of escalating abuse involving the same victim and a similar type of harm. *Hinton,* 31 F.3d at 822–23. We have held that if the charged and prior conduct are part of a pattern of abuse involving the same victim and a similar modus operandi, the final assault may be the "culmination of a long-entertained plan or desire belying an accident defense." *Id.* at 822.

■ Yazzie further argues that even if the requirements of Rule 404(b) are met, Rule 403 precludes admission of the prejudicial prior bad acts. We disagree. "We have consistently rejected similar argu-

ments where, as here, the evidence was probative of intent and the district court properly instructed the jury as to the limited purpose for which the evidence was being admitted." *Id.* at 823.

### III.

■ Yazzie contends that the admission of hearsay testimony from Dr. Kronen violated his rights under the Confrontation Clause. Hearsay statements violate the Confrontation clause "if they were not admitted under a well-recognized exception to the hearsay rule or the court failed to make a finding that the statements were otherwise reliable." *United States v. Yazzie,* 59 F.3d 807, 812 (9th Cir.1995). We review a district court's decision to admit evidence under an exception to the hearsay rule for abuse of discretion. *United States v. Bland,* 961 F.2d 123, 126 (9th Cir.1992). Alleged violations of the Confrontation Clause are reviewed de novo. *United States v. George,* 960 F.2d 97, 98 (9th Cir.1992).

In this case Dr. Kronan's hearsay testimony was admitted under the firmly rooted medical examination hearsay exception. Rule 803(4) permits hearsay testimony regarding "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

Specifically, Yazzie argues that Dr. Kronan treated the victim for a sprained thumb, not for domestic violence. Yazzie claims that there is no evidence that the victim knew she was being diagnosed and treated for domestic violence. We find appellant's arguments unpersuasive. This circuit has found that statements by a victim identifying a sexual abuser are admissible when they are made for the purposes of, and are reasonably pertinent to, medical diagnosis and treatment. *Guam v. Ignacio,* 10 F.3d 608, 612 (9th Cir.1993).

Dr. Kronen testified that when he asked the victim why she was at the emergency room, the victim volunteered that she was there because defendant had assaulted her and injured her thumb. The doctor testified that when he sees a patient and domestic violence appears to be involved in the purpose of the visit, he pursues that line of inquiry in order to treat the patient. At this point not only had the victim informed Dr. Kronen that she was the victim of domestic violence, but Dr. Kronen had to have Yazzie removed from the emergency room so that he could treat the victim because Yazzie was disruptive.

Domestic violence, like sexual abuse, "involves more than physical injury; the physician must be attentive to treating the victim's emotional and psychological injuries, the exact nature and extent of which often depend on the identity of the abuser." *George,* 960 F.2d at 99. The doctor testified that he and the victim engaged in a long discussion about domestic violence where the victim admitted to prior instances of domestic violence and the doctor described the risk factors and provided her with literature. He also advised her that the only effective treatment was to contact the authorities and to get out of the relationship. The victim's actions after the conversation show that she understood that she was being treated and diagnosed. She made arrangements to go home with her mother and contacted the authorities. We hold, therefore, that the district court did not abuse its discretion in admitting Dr. Kronen's hearsay testimony pursuant to Rule 803(4) because the statements were reasonably pertinent to the diagnosis or treatment.

## CONCLUSION

For the reasons state above, we affirm the defendant's conviction.

AFFIRMED.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.