**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carlos RODRIGUEZ, Defendant–Appellant.**

**No. 07–10383.**

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 11, 2009.*

Filed March 4, 2009.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Joseph A. Fazioli, Esquire, Office of the U.S. Attorney, San Jose, CA, for Plaintiff–Appellee.

Arthur Pirelli, Esquire, Law Office of Arthur Pirelli, Novato, CA, for Defendant–Appellant.

Carlos Rodriguez, San Jose, CA, pro se.

Before: SCHROEDER, CANBY and HAWKINS, Circuit Judges.

## MEMORANDUM **

Carlos Rodriguez appeals his conviction arising out of his participation in a robbery of an armored truck. The government argued at trial that Rodriguez, an employee of Brinks, International ("Brinks"), conspired with Felix Carrasco and Manuel Lopez to rob the Brinks truck that he was driving while it was parked outside of a Bank of America building. The jury found him guilty on all three counts: conspiracy to commit robbery, robbery, and using a firearm in a crime of violence, in violation of 18 U.S.C. §§ 924(c) & 1951. He appeals two of the district court's evidentiary decisions and claims that the government violated his due process rights by failing to investigate one of their witnesses. We affirm his conviction.

## I. Evidentiary Decisions

We review de novo the question of whether evidence falls within the scope of Federal Rule of Evidence 404(b), *United States v. Montgomery,* 384 F.3d 1050, 1061 (9th Cir.2004), and for an abuse of discretion the district court's decision to admit or exclude hearsay evidence, *see United States v. Yazzie,* 59 F.3d 807, 812 (9th Cir.1995).

## A. Frank Muniz's Testimony

■ The district court did not err by allowing Frank Muniz to testify about Rodriguez's efforts to recruit Muniz as the getaway driver for the robbery. Muniz testified that beginning in mid–2002 and ending in early 2003, Rodriguez made various efforts to convince Muniz to join the conspiracy, including: 1) taking Muniz to a Bank of America branch on Rodriguez's

Brinks route to demonstrate how the robbery would take place; 2) showing Muniz weapons and a face mask; and 3) introducing Muniz to Rodriguez's co-conspirator, Felix Carrasco. The robbery took place on May 5, 2003, and Muniz did not participate in it.

Rule 404(b) prevents the admission of other acts to prove the character or propensity of Rodriguez, but does not apply when that evidence is "inextricably intertwined" with the charged offenses of robbery and conspiracy to commit robbery. *See United States v. Lillard,* 354 F.3d 850, 854 (9th Cir.2003). Muniz's testimony demonstrated a close link between what Rodriguez told Muniz he intended to do, and what he was charged with doing. *See United States v. Williams,* 989 F.2d 1061, 1070 (9th Cir.1993) (hearsay evidence of defendant's prior, uncharged drug sales was inextricably intertwined because the uncharged sales directly gave rise to the charged drug conspiracy). That Muniz was not a coconspirator, and that the robbery of the Brinks truck took place at a different Bank of America branch than the one Rodriguez showed Muniz, do not negate this strong correlation. All of the conversations between Rodriguez and Muniz took place within the time frame that the government alleged in its conspiracy charge. *See Montgomery,* 384 F.3d at 1062 (Rule 404(b) inapplicable to records of non-reported rental income because they were made during the course of the alleged conspiracy to commit mail fraud). In fact, the government alleged that the conspiracy began with Rodriguez's conversations with Muniz. Thus, Muniz's testimony "outlined the government's theory of the scope of the conspiracy." *Id.* Moreover, at which Bank of America branch the

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

truck would be robbed was not germane to the conspiracy; the bank was not robbed, but the truck was. Muniz's testimony about the conspiracy was inextricably intertwined with the charged offenses, and the district court was correct in admitting it.

### B. Brian Vierra's Testimony

■ The district court also did not err by prohibiting Rodriguez's investigator, Brian Vierra, from testifying about conversations he had with Mario Ayala, another Brinks employee. Rodriguez would have used this testimony to impeach Carrasco, his co-conspirator who pleaded guilty and testified against him. He admits that the evidence is hearsay, but argues that the district court should have admitted it under Rule 807, the residual exception to the hearsay rule.

Among other things, evidence admitted under Rule 807 must have "circumstantial guarantees of trustworthiness." *United States v. Sanchez–Lima*, 161 F.3d 545, 547 (9th Cir.1998) (hearsay statements were trustworthy because they were videotaped, made under oath, made voluntarily, and consistent with prior statements). The statements Ayala allegedly made to the defense's investigator have no indicia of reliability. They were not recorded, not made under oath, and there is no way to tell whether they were made voluntarily. Moreover, if Vierra had testified to the hearsay, the government would have been unable to cross-examine the declarant Ayala or otherwise develop Ayala's statements. *See id.* at 547–48 (hearsay testimony more reliable for purposes of Rule 807 when government has an opportunity to cross-examine or otherwise develop hearsay testimony). Consequently, it was not an abuse of discretion to refuse to admit such evidence.

### II. Due Process

■ The government did not violate Rodriguez's due process rights by failing to investigate a false statement by Carrasco. *See Commonwealth v. Bowie*, 243 F.3d 1109, 1117–19 (9th Cir.2001) (prosecutor failed duty to ensure a fair trial by ignoring content of potentially exculpatory letter, not investigating letter's origins, and instead only turning it over to defendant). Carrasco had told investigating agents that he used a toy gun in the robbery, when in fact he had used a real gun. Rodriguez argues that only after the defense alerted the government to this lie did the government conduct a subsequent interview where Carrasco admitted that he had used a real gun in the robbery.

Whether Rodriguez caused a follow-up investigation on Carrasco's statement is irrelevant, because an investigation did occur and Rodriguez knew about the lie a year before trial. In fact, he was able to use it extensively to impeach Carrasco's credibility during trial. In addition, Rodriguez admitted that the government provided everything it was required to deliver in discovery. Thus, this case is unlike any of those cited by Rodriguez, where the government had at least recklessly allowed false testimony at trial, *id.* at 1117–23, or failed to investigate and disclose a witness's lie, *Morris v. Ylst*, 447 F.3d 735, 743–44 (9th Cir.2006), thus violating the defendant's due process rights. The government's investigation of Carrasco's lie did not violate Rodriguez's rights.

### AFFIRMED.